U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY 0 8 2015

TONY R. MOORE, CLERK
BY _____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| COURTNEY C. PICOU | CIVIL ACTION 12-2259 |
| VERSUS | JUDGE HAIK |
| BARRY GRAHAM OIL SERVICE, LLC | MAGISTRATE HANNA |

## RULING

Before the Court is a Motion for Summary Judgment on issue of subrogation filed by Courtney Picou (Doc. #33). In his most recent filings, the plaintiff concedes the law applicable to this matter is the Texas Oilfield Anti-Indemnity Act (TOAIA) because the incident occurred in Texas territorial waters and the intended work location contemplated by the contract was off the coast of Texas. The Court agrees.

In their supplemental filings, the issue raised by the parties is whether the indemnity agreements at issue are enforceable or whether the TOAIA nullifies those provisions. Liberty Mutual takes the position that the motion for summary should be denied because there are not reciprocal insurance provisions provided for in the Master Service Agreement. Liberty Mutual agrees the contract contains reciprocal indemnity agreements, but argues Paragraph 12 of the MSA, pertaining to insurance, sets forth various obligations on Contractor (Tetra) which it does not specifically enforce on the Company (Apache). Specifically, Contractor/Tetra is required to carry the specified insurance coverages set forth in Exhibit B to the contract, shall include Company Group/Apache as an additional insured to the extent of the obligations taken under the

1

contract, and shall expressly waive subrogation as to Company Group. Exhibit B sets out the particulars of the insurance coverage to be undertaken.

Liberty Mutual argues, however, there is no identical provision in the MSA binding Company/Apache to do the same. Consequently, the TOAIA's Safe Harbor provision would not apply and the indemnity obligations under the Master Service Agreement are not enforceable. Further, Liberty Mutual argues that the MSA obligates Contractor/Tetra to determine the amount of premiums, advise its broker of Company's desire to be included as an additional insured and to receive a waiver of subrogation, and to have the broker submit invoices for such premiums. There are no provisions requiring Company to do the same.

Finally, Liberty Mutual argues that, under section 12(d), additional insured coverage and subrogation waivers are effective upon receipt of such premiums by the broker from Company, but there are issues of fact regarding the payment of premiums.

Courtney Picou agrees the indemnity provisions in the MSA are reciprocal and argues that both are supported by insurance, even if the contract doesn't specifically state the exact same language for both parties. Picou strongly disagrees with the contention that the MSA does not require Company/Apache to carry similar insurance coverages to those of Contractor/Tetra. Chapter 12 of the MSA obligates Contractor/Tetra to carry the insurance obligations set forth above. It also clearly obligates Company/Apache in Paragraph 12(b), which states:

> **Likewise, all applicable insurance policies of Company shall expressly waive subrogation as to Contractor Group. Each policy of Company, other than worker's compensation policies, shall include Contractor Group as an additional insured, to the extent of the obligations undertaken and the indemnities and liabilities assumed by Company under this Contract.**

2

Picou argues this language binds the Company just as it does the Contractor. Under a plain reading of the "safe harbor" exception to the TOAIA contained in Tex. Civ. Prac. & Rem. Code section 127.005, the indemnity and insurance agreements contained in the MSA are enforceable.

As a general rule, the TOAIA voids indemnity provisions in agreements "pertaining to a well for oil, gas, or water or to a mine for a mineral" if those agreements seek to indemnify a person for his own negligence. Tex. Civ. Prac. & Rem.Code section 127.001, et seq. There is no question in this case that this matter involves a well for oil, gas or water and that an indemnity agreement is involved. Tex. Civ. Prac. & Rem. Code section 127.005, sometimes referred to as a "safe harbor", provides an exception to the general rule. It is entitled "Insurance Coverage" and it states:

> (a) This chapter does not apply to an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or ( c).
>
> (b) With respect to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to obtain for the benefit of the other party as indemnitee.
>
> ( c) With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.

A plain reading of section 127.005 shows us that reciprocal and identical insurance provisions are not required in order for this "safe harbor" provision to apply. In fact, it clearly contemplates situations where that is not the case. The exception applies in those situation where parties agree

3

in writing that the indemnity obligations they have undertaken will be supported by liability coverage.

In *Nabors Corporate Services, Inc. v. Northfield Insurance Company*, 132 S.W. 3d 90, (14th Dist., 2004), the Court of Appeals of Texas stated with respect to parties in that case, "Thus, once Pool and Abraxas agreed in writing that the indemnities would be supported by insurance, they complied with the safe harbor provisions of the TOAIA." Such is the same here. In *Ken Petroleum Corporation, et al v. Questor Drilling Corporation*, 24 S.W. 3d. 344, the Supreme Court of Texas found section 127.005 does not require the procuring of insurance in the same amounts by each party and it does not require a written agreement to specify the dollar amounts of insurance to be provided. Although the Court was analyzing the 1991 version of the statute at that time, the sections leading to these conclusions have not changed. Further, a plain reading of the statute supports that finding.

In the case at hand, Tetra and Apache entered into a Master Service Agreement in June 2004, which was in effect at the time of Mr. Picou's accident on March 8, 2012. In that contract, the parties agreed to mutual indemnity provisions. Both of those indemnity agreements were supported by a written insurance obligation. Although the insurance provisions are not identical for both Tetra and Apache, both indemnity obligations are secured by an insurance obligation in writing, making the application of Tex. Civ. Prac. & Rem. section 127.005 proper.

Liberty Mutual's arguments with respect to the payment of premiums carries no weight as that is not a requirement for the statute to apply. In fact, in *Nabors,* the Appellate Court noted, "The words in the statute "will be supported" and "to be furnished" suggest the Legislature did

4

not intend the TOAIA govern *all* aspects of the underlying insurance or void indemnity agreements should the underlying insurance fail. Instead, these words suggest that the Legislature intended the parties' indemnity obligations and the underlying insurance be controlled by the terms of the parties' written agreements." As such, the issue of whether premiums were properly paid and related matters are of no concern to the application of the exception.

For the foregoing reasons, the Court concludes that Tetra and Liberty Mutual contractually agreed to waive any claim for subrogation in connection with this matter and, as such, plaintiff's Motion for Summary Judgment is GRANTED and the Complaint of Intervention filed by Liberty Mutual is DISMISSED in its entirety, with prejudice, at Liberty Mutual's cost.

**THUS DONE** and **SIGNED** on this 7th **day of May, 2015.**

_____
RICHARD T. HAIK, SR., DISTRICT JUDGE

5